1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   TEAMSTERS LOCAL UNION NO. 117,

11              Plaintiff,                          Case No.  C05-0113L

12         v.                                       ORDER REGARDING MOTIONS TO
                                                    DISMISS OR TO STAY
13   SYSCO FOOD SERVICES OF SEATTLE,
     INC., *et al.*,

14              Defendants.

15

16         This matter comes before the Court on motions filed by defendants Sysco Food Services

17   of Seattle, Inc.  ("Sysco Seattle"), Sysco Food Services, Inc. ("Sysco Post Falls"), and Sysco

18   Corporation ("Sysco Corp.") (Dkt. #s 20, 23, & 26).  Defendants move to dismiss or, in the

19   alternative, to stay the federal court proceedings pending resolution of issues before the National

20   Labor Relations Board ("NLRB").  For the reasons set forth below, defendants' motions are

21   granted in part and denied in part.

22                                  **I.  BACKGROUND**

23         Sysco Post Falls and Sysco Seattle are both wholly owned subsidiaries of Sysco

24   Corporation.  Sysco Seattle operates a facility in Kent, Washington from which it distributes

25   groceries to retail stores throughout the Pacific Northwest, including a number of locations in

26

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY

1  eastern Washington and northern Idaho.  Sysco Seattle's employees, including its drivers, are

2  represented by Teamsters Local Union No. 117 ("Local 117").

3          Local 117 and Sysco Seattle have entered into a collective bargaining agreement (the

4  "CBA") which covers the terms and conditions of employment at Sysco Seattle.  Section 20.01

5  of the CBA, the parties agree that the work of the bargaining unit may only be performed by

6  employees that belong to that bargaining unit.  Section 20.02 prohibits Sysco Seattle from

7  unilaterally changing employment terms or sub-contracting work without first engaging in good-

8  faith bargaining with Local 117 about the effects of the changes.

9          The dispute between the parties arose when Sysco Post Falls announced that it intended

10 to open a new facility in Post Falls, Idaho that would supply groceries to eastern Washington

11 and northern Idaho.  When it learned of the new facility, Sysco Seattle decided to stop operating

12 in eastern Washington and northern Idaho.  Sysco Seattle informed Local 117 that 33 drivers

13 would be laid off as a result of its decision, but also informed Local 117 that Sysco Post Falls

14 would likely require the services of the drivers.

15         In late 2004, Teamsters Local 690, based in Spokane, Washington, was designated by the

16 Joint Council of Teamsters No. 28 as the bargaining representative with exclusive jurisdiction

17 for all drivers and warehouse employees hired at the new Post Falls facility.  In January, 2005,

18 Local 690 and Sysco Post Falls began negotiations on labor agreements to cover employees at

19 the Post Falls facility.  The Post Falls agreement, however, has yet to be implemented.

20         When Local 117 learned that Sysco Seattle intended to cease operating in eastern

21 Washington and northern Idaho, it asked Sysco Seattle to consult with it under § 20.02 of the

22 CBA about the effects of the decision.  The "effects bargaining" was scheduled for February 10,

23 2005.  Several weeks before that meeting, however, Local 117 learned that Sysco Post Falls

24 either had begun hiring, or intended to start hiring, employees for the new Post Falls facility.

25 Local 117 filed this lawsuit on January 21, 2005.

26         After the lawsuit was filed, defendants filed several complaints with the NLRB.  For

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY

1   instance, Sysco Post Falls filed unfair labor practice charges against Local 690, the International

2   Brotherhood of Teamsters, and Local 117.  These claims assert that Local 690 has refused to

3   accept the negotiated labor agreement with Sysco Post Falls and that the International

4   Brotherhood of Teamsters and Local 117 have violated § 8(b)(1)(A) of the National Labor

5   Relations Act.  In addition, Sysco Seattle and Sysco Post Falls have both filed unit clarification

6   petitions with the NLRB.

7          In its amended complaint, Local 117 seeks  injunctive relief under § 301 of the Labor

8   Management Relations Act (the "LMRA"), 19 U.S.C. § 185(a), to prevent breaches of §§ 20.01

9   and 20.02 of the CBA.  Local 117 has asserted these claims against Sysco Seattle and against

10  Sysco Post Falls and Sysco Corp. as "alter egos" of Sysco Seattle.  In the event that Sysco Post

11  Falls and Sysco Corp. are not alter egos of Sysco Seattle, Local 117 has filed alternative claims

12  of tortious interference with contractual relationship (under both Washington law and federal

13  common law), and civil conspiracy against Sysco Post Falls and Sysco Seattle.  Finally, Local

14  117 seeks a declaratory judgment regarding its rights under the CBA.

15         In their respective motions to dismiss, defendants argue that the § 301 claims should be

16  dismissed or stayed because (1) this Court lacks subject matter jurisdiction over the claims, and

17  (2) the NLRB, not this Court, has primary jurisdiction over issues arising under § 301 of the

18  LMRA.  Sysco Post Falls and Sysco Corp. argue that the tort-based claims should be dismissed

19  because they are preempted by both § 301 of the LMRA and the Garmon preemption doctrine,

20  see San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244 (1959).  In addition, Sysco

21  Post Falls and Sysco Corp. argue that the Civil Conspiracy claim fails as a matter of law.[1]

22

23

---

24         [1]Defendants also argued that this Court lacks diversity jurisdiction over the state law claims and
25  should not exercise pendent jurisdiction over those claims.  Since, as discussed below, this Court has
    determined that the state law claims are preempted by the LMRA, these arguments need not be
26  addressed.

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY

## II.  DISCUSSION

**A.  Standard of Review.**

In the context of a defendant's motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), this Court must "take the allegations in the plaintiff's complaint as true." <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004).  In the context of a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, a court must (1) construe the complaint in the light most favorable to the plaintiff, (2) accept all well-pleaded factual allegations as true, and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief.  <u>See</u> <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).

**B.  Claims under § 301 of the LMRA.**

**1.    Subject Matter Jurisdiction and Failure to Submit Claims to Arbitration.**

Sysco Seattle argues that this Court lacks subject matter jurisdiction over the § 301 claims asserted against it because Local 117 never submitted the underlying breach of contract claims to arbitration.  There is no dispute that the underlying question of whether Sysco Seattle has breached, or is about to breach, §§ 20.01 or 20.02 of the CBA are subject to the CBA's arbitration provision.  The underlying contractual dispute, however, is not before the Court. Instead, Plaintiff's § 301 causes of action seek a "reverse <u>Boys Markets</u>" injunction.  <u>See</u> <u>Boys Markets, Inc. v. Retail Clerks Union, Local 770</u>, 398 U.S. 235, 254 (1970); <u>see also</u> <u>Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency</u>, 89 F.3d 629, 632 (9th Cir. 1996).  A "reverse <u>Boys Markets</u>" case is one in which "an employer makes changes in areas which are subject to the grievance arbitration procedure, and the union seeks to enjoin the employer from making the changes until the grievance is resolved through arbitration." <u>San Francisco Newspaper Agency</u>, 89 F.3d at 632.  Since the purpose of Plaintiff's § 301 claims is not to determine the parties' obligation under the CBA, but to preserve the status quo pending arbitration, Plaintiff is not required to submit the § 301 claims to arbitration.

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY

1          **2.      Dismissal or Stay in Deference to NLRB's Primary Jurisdiction.**

2          Section 301 of the LMRA gives this Court subject matter jurisdiction over cases

3  involving the violation of private labor agreements.  See 29 U.S.C. § 185(a); SEIU v. St. Vincent

4  Medical Center, 344 F.3d 977, 983 (9th Cir. 2003).  This Court's jurisdiction, however, is

5  concurrent with the NLRB's, and it is well-settled that "federal courts 'must tread lightly' in

6  areas of the NLRB's primary jurisdiction and must defer to the NLRB 'when on close

7  examination, section 301 cases fall within the NLRB's primary jurisdiction.'"  Id. (quoting

8  United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., Local 342 v.

9  Valley Engineers, 975 F.2d 611, 613-14 (9th Cir. 1992), cert. denied, 516 U.S. 912 (1995).  In

10  determining whether to defer to the NLRB, the Court asks "'whether the major issues to be

11  decided . . . can be characterized as primarily representational or primarily contractual.'"  Pace

12  v. Honolulu Disp. Serv., Inc., 227 F.3d 1150, 1157 (9th Cir. 2000) (quoting Valley Engineers,

13  975 F.2d at 614).  Issues that are primarily representational should be decided by the NLRB

14  while this Court should retain jurisdiction over issues that are primarily contractual.

15          Whether the issues in this dispute are primarily representational or primarily contractual

16  turns on whether Local 117 has brought a "single employer" claim or an "alter ego" claim

17  against defendants.  In UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing

18  and Pipefitting Indus. of U.S. and Canada, AFL-CIO v. Nor-Cal Plumbing, Inc., the Ninth

19  Circuit noted that "the requirements of [the alter ego and single employer] theories overlap

20  substantially.  Under both theories, the district court must . . . determine whether the two firms

21  are a single employer be measuring the degree of common ownership, management, operations,

22  and labor relations."  48 F.3d 1465, 1470 (9th Cir. 1994), cert. denied, 516 U.S. 912 (1995).

23          Once the single employer determination has been made, however, the two theories have

24  different requirements.  The single employer theory requires a showing that employees of the

25  two firms constitute a single bargaining unit.  Since the NLRB "has primary jurisdiction to

26  determine whether the employees of both the union and non-union firms constitute an

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY

1  appropriate bargaining unit," a district court must defer to the NLRB when a single employer

2  theory is raised.  Id. at 1470.  The alter ego theory, on the other hand, does not require a

3  showing that a single bargaining unit exists.  Instead, the alter ego theory requires a plaintiff to

4  prove, and the district court to find, that one of the firms "was being used in a sham effort to

5  avoid collective bargaining obligations rather than for the pursuit of legitimate business

6  objectives untainted by union animus."  Id. (internal quotations and citations omitted).  As the

7  Ninth Circuit has made clear,

8         The single employer and alter ego doctrines function differently. . . .  To impose a
          labor agreement on a nonsignatory company under the single employer doctrine,
9         the employees of both companies must be shown to constitute a single bargaining
          unit.  Such a showing is not required under the alter ego doctrine.  It focuses on
10        whether there is an attempt to avoid the obligations of a collective bargaining
          agreement through a sham transaction or a technical change in operation.

11 Carpenters' Local Union No. 1478 v. Stevens, 743 F.2d 1271, 1276-77 (9th Cir. 1984) (footnotes

12 omitted), cert. denied, 471 U.S. 1015 (1985).  If the plaintiff prevails on both steps of the alter

13 ego theory, the court can hold that a bargaining agreement covered both Sysco Seattle and Sysco

14 Post Falls without deferring to the NLRB's primary jurisdiction.  See Nor-Cal Plumbing, 48

15 F.3d at 1470 (citing Northwest Admrs., Inc. v. Con Iverson Trucking, Inc., 749 F.2d 1338, 1340

16 (9th Cir. 1984)).

17        Here, it is clear that the issues before this Court do not fall under the NLRB's primary

18 jurisdiction.  To begin, Local 117 has abandoned any claims based on a single employer theory

19 (see Dkt. # 33, Opp. to Sysco Food Services' Mot. to Dismiss at p. 8) and chosen to proceed

20 under an alter ego theory.[2]  What is more, in dismissing the unit clarification claims filed by

21

22        [2]The fact that Local 117 has not raised a single employer claim distinguishes this case from Valley
23 Engineers.  In Valley Engineers, the Ninth Circuit recognized that "a single employer finding must be
   supplemented by a unit clarification before the terms of a collective bargaining agreement can be imposed
24 on an nonsigning entity."  975 F.2d at 614.  Since only the NLRB can conduct the unit clarification
   inquiry, the Court held that where a party asserts claims under both a single employer theory and an alter
25 ego theory, the district court must defer to the NLRB on both issues.  Id.  Here, since no single employer
26 claim has been raised, the NLRB's primary jurisdiction has not been triggered.

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY

1  Sysco Seattle and Sysco Post Falls, the NLRB held that "Local 117 has alleged a work dispute

2  claim, rather than a representational claim. . . .  Local 117's allegation that [Sysco Post Falls] is

3  an alter ego of [Sysco Seattle] is a necessary component of its contractual claim . . ."[3]  Dkt. # 65,

4  Ex. 1, NLRB Regional Director's Decision and Order Dismissing Petitions at p. 4.  Based on the

5  holding in Nor-Cal Plumbing, Local 117's abandonment of any single employer claim, and the

6  conclusions of the NLRB's Regional Director, this Court finds that Local 117's claims are

7  "primarily contractual" and are "properly in federal court rather than before the NLRB."  Pace,

8  227 F.3d at 1157.

9         **3.       Stay in Deference to NLRB's Concurrent Jurisdiction.**

10        Defendants argue that even if the claims are not within the primary jurisdiction of the

11  NLRB, the Court should exercise its discretion and stay this case in favor of the NLRB's

12  concurrent jurisdiction.  In cases such as this where a district court and the NLRB share

13  concurrent jurisdiction, the district court may exercise its discretion and stay its own

14  proceedings pending resolution of the NLRB dispute.  See Northern California Dist. Council of

15  Hod Carriers, Bldg. and Const. Laborers, AFL-CIO v Opinski, 673 F.2d 1074, 1075 (9th Cir.

16  1982).  In determining whether to stay proceedings, a district court should consider, among other

17  things, whether a decision in the case before it and a decision before the NLRB present more

18  than a potential conflict and whether an eventual NLRB decision will have issue preclusive

19  effect.  See Central Valley Typographical Union No. 46 v. McClatchy Newspapers, 762 F.2d

20  741, 749 (9th Cir. 1985).

21        Certainly, the unit clarification claims will not present a conflict with the issues to be

22  decided by this Court.  See Carpenters Local Union No. 1846 of United Broth. of Carpenters

23  and Joiners of America, AFL-CIO v. Pratt-Farnsworth, Inc., 690 F.2d 489, 517 (5th Cir. 1982)

24  ("Obviously, the Board will not make an alter ego finding in a unit clarification proceeding,

25

26        [3]Sysco Seattle and Sysco Post Falls have appealed this finding.

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY

1  since the alter ego theory does not raise a unit determination issue"), <u>cert. denied</u>, 464 U.S. 932

2  (1983).  Defendants, however, note that Sysco Post Falls has another set of claims before the

3  NLRB.  These claims assert that Local 117 and the International Brotherhood of Teamsters have

4  committed unfair labor practices by interfering with Sysco Post Falls' efforts to enter into an

5  agreement with Local 690.  There is some potential that the unfair labor practices claims will

6  address some of the issues raised before this Court.  For instance, defendants have presented

7  letters from the NLRB indicating that the NLRB "must make a determination on the single

8  employer/alter ego question in order to decide these cases."  <u>See</u> Dkt. #s 61, Ex. 2 & 62, Ex. 2.

9      Despite this potential conflict, a stay is not appropriate.  <u>See Intern'l Broth. of Elec.</u>

10  <u>Workers, Local 532 v. Brink Constr. Co.</u>, 825 F.2d 207, 213 (9th Cir. 1987) ("While the potential

11  for conflict exists between the court's decision and the NLRB's ultimate decision, this alone

12  does not compel a stay").  To begin, "[t]he presence of the NLRB does not place all issues of a

13  case within the NLRB's primary jurisdiction."  <u>SEIU v. St. Vincent Med. Ctr.</u>, 344 F.3d at 985.

14  This is especially true where, as here, there is no question that the unfair labor practices claims

15  before the NLRB "differ from the issue before the district court."  <u>See Sheet Metal Workers</u>

16  <u>Intern. Ass'n, Local No. 162 v. Jason Mfg., Inc.</u>, 900 F.2d 1392, 1401 (9th 1990).  The NLRB

17  claims assert that Local 690, Local 117, and the International Brotherhood of Teamsters have

18  interfered with Sysco Post Falls employees' rights to enter into a collective bargaining

19  agreement.  This suit, on the other hand, regards the applicability of a reverse <u>Boys Markets</u>

20  injunction under the CBA.  In addition, although the NLRB has requested information regarding

21  whether the defendants are a single entity or alter egos, it is far from certain that resolving the

22  alter ego dispute is necessary to resolve the unfair labor practices claim.  <u>See Durkin v. Shea &</u>

23  <u>Gould</u>, 92 F.3d 1510, 1516 (9th Cir. 1996) (issue preclusion occurs where same issue is "actually

24  and necessarily decided" in prior case).

25      Finally, the Court notes that the unfair labor practices claims were filed by Sysco Post

26  Falls *after* Local 117 initiated this suit.  A similar situation occurred in <u>Brink Constr.</u>, where "the

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY

-8-

1   *defendant* in the LMRA § 301 suit filed unfair labor practice charges after the filing of the suit."

2   Brink Constr., 825 F.2d at 214 (emphasis in original). As in Brink Constr., allowing a stay here

3   "would frustrate the congressional intent to have the district courts resolve labor-management

4   contract disputes," and "turn on its head the general federal court practice of avoiding conflicts

5   of jurisdiction by the court in the subsequently filed proceeding staying its proceeding pending

6   the outcome of the initial suit." Id. Under the circumstances, entering a stay until the NLRB

7   claims have been resolved would not be appropriate.

8   **C.   Claims under Washington Law.**

9           **1.   Civil Conspiracy and CPA Claims.**

10          Local 117's civil conspiracy claim is based on the premise that defendants violated

11  Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and the Washington Consumer Protection

12  Act ("CPA"), RCW 19.86.030, by creating a horizontal division of territory.

13          These claims fail as a matter of law. Sysco Post Falls and Sysco Seattle are wholly

14  owned subsidiaries of Sysco Corporation. "[T]he coordinated activity of a parent and its wholly

15  owned subsidiary must be viewed as a single enterprise for purposes of § 1 of the Sherman Act."

16  Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771 (1984). The state law

17  conspiracy claim must fail because the defendants "cannot form a 'combination or conspiracy'

18  for purposes of Section 1." Boulware v State of Nev., Dept. of Human Resources, 960 F.2d

19  793, 797 (9th Cir. 1992).

20          Local 117's CPA claim fails for similar reasons. The CPA was drafted to "complement

21  the body of federal law governing restraints of trade, unfair competition and unfair, deceptive,

22  and fraudulent acts or practices. . . ." RCW 19.86.920. "When the Legislature enacted the

23  CPA, it anticipated our courts would be guided by the interpretation given by the federal courts

24  to the corresponding federal statutes." Ballo v. James S. Black Co., 39 Wn. App. 21, 25-26

25  (1984). Washington courts, of course, are not bound to follow federal antitrust law, but any

26  departures from federal law "must be for a reason rooted in our own statutes or case law. . . ."

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY

1  Blewett v. Abbot Laboratories, 86 Wn. App. 782, 788 (1997), rev. denied, 133 Wn.2d 1029

2  (1998).  This Court has not found, and Local 117 has not identified, any statutes or case law that

3  would suggest departing from the Copperweld holding.

4         2.     **State Law Claim of Tortious Interference With Contractual Relationships.**

5        Defendants argue that the state law claims of tortious interference with contractual

6  relationships against Sysco Post Falls and Sysco Corp. are preempted by § 301 of the LMRA.

7  Section 301 preempts state law claims "if resolution of the claim hinges on the court's

8  interpretation of a CBA."  Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988).

9  State law claims that are "independent" of the CBA or do not turn on any provision of the CBA,

10  however, are not preempted  See Lingle, 486 U.S. at 407; see also Livadas v. Bradshaw, 512

11  U.S. 107 (1994) ("the bare fact that a collective-bargaining agreement will be consulted in the

12  course of state-law litigation plainly does not require the claim to be extinguished").

13        There is little doubt that the state tortious interference with contractual relationship claim

14  is preempted by the NLRA.  The Ninth Circuit "has generally found claims for interference with

15  contractual relations and prospective economic advantage preempted by section 301."  Milne

16  Employees Ass'n v. Sun Carriers, 960 F.2d 1401, 1412 (9th Cir. 1992) (citations omitted), cert.

17  denied, 508 U.S. 959 (1993).  Such a finding is appropriate here.  At its core, this claim requires

18  the Court to determine whether the parties have breached the terms of the CBA.[4]  The state

19  tortious interference claim will not just require a consultation of the CBA, but will require this

20  Court to determine what duties the parties owed to one another under the CBA and whether

21  those duties were breached.  Section 301 preemption applies to just such circumstances.  See

22  

23      [4]To prove tortious interference with contractual relationships, a plaintiff must show "(1) the
existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of
24  that relationship; (3) an intentional interference inducing or causing a breach or termination of the
relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper
25  means; and (5) resultant damage."  Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 157
26  (1997).

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY

1   Milne,  960 F.2d 1401, 1412 (9th Cir. 1992) (preemption of tortious interference claim brought

2   under California law[5] because the claim "will require interpretation of provisions in the

3   collective bargaining agreements").[6]

4   **D.      Federal Claim for Tortious Interference with Contractual Relationships.**

5            In its opposition to the Motion to Dismiss, Local 117 asserts that it brought tortious

6   interference with contractual relations claims under both state and federal law.  It argues that if

7   the state law claim is preempted, then the federal law claim based on § 301(a) of the LMRA and

8   federal common law would still survive.  Section 301(a), 29 U.S.C. § 185(a), provides:

9            Suits for violation of contracts between an employer and a labor organization
             representing employees in an industry affecting commerce as defined in this
10           chapter, or between any such labor organizations, may be brought in any district
             court of the United States having jurisdiction of the parties, without respect to the
11           amount in controversy or without regard to the citizenship of the parties.

12   The Federal Circuits that have addressed the question have split on whether § 301 confers

13   jurisdiction to hear claims against non-signatories to a collective bargaining agreement for

14   tortious interference with that agreement.  See Int'l Union, United Mine Workers of America v.

15   Covenant Coal Corp., 977 F.2d 895, 897 (1992) (identifying split in Circuits).

16           Although International Union identified the Ninth Circuit as one of the Courts that allows

17   for tortious interference claims under § 301, see id., the Ninth Circuit has, in fact, yet to

18   explicitly rule on the issue.  In Painting and Decorating Contractors Ass'n of Sacramento v.

19   Painters and Decorators Joint Comm. of the East Bay Counties, 707 F.2d 1067, 1071 (9th Cir.

20   1983), the Ninth Circuit held that a non-signatory to a collective bargaining agreement is a

21   proper party to a suit brought under § 301.  In Painting and Decorating, however, the non-

23           [5]California's tortious interference with contractual relations claim is substantively identical to
24   Washington's.  Compare, Leingang, 131 Wn.2d at 157 with Pacific Gas & Elec. Co. v. Bear Stearns &
     Co., 50 Cal. 3d 1118, 1126 (1990).

25           [6]Because the tortious interference claim is preempted by § 301, this Court need not determine
26   whether it would also be preempted under the Garmon preemption doctrine.

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY

1  signatory defendant was inextricably intertwined with the collective bargaining agreement that
2  plaintiff claimed had been breached.  Indeed, the non-signatory defendant was an association
3  created by the collective bargaining agreement and responsible for administering and enforcing
4  that agreement.  See id. at 1069.  Painting and Decorating did not hold that § 301 permits a
5  plaintiff to bring a tort claim against a non-signatory to a collective bargaining agreement.  See
6  Wynn v. National Broadcasting Co., 234 F.Supp.2d 1067, 1120 (C.D. Cal. 2002) (discussing
7  Painting and Decorating).  Although the Ninth Circuit has indicated that a district court may
8  fashion § 301 remedies in a manner consistent with traditional tort remedies, see Rozay's
9  Transfer v. Local Freight Drivers, Local 208, 850 F.2d 1321 (9th Cir. 1988), it has not held that a
10 party may bring a tort action under § 301.

11      In Wynn, the district court for the Central District of California, had an opportunity to
12 address this issue.  See 234 F.Supp.2d at 1119-1121.  After carefully analyzing the Ninth Circuit
13 case law as well as precedent from other Circuits, the Wynn court held that § 301 did not allow
14 for a tortious interference claim.  See id.  The court in Wynn cited with approval the Seventh
15 Circuit's conclusion that "'section 301 creates a right of action only for breach of a collective
16 bargaining agreement; it is not a tort statute.'"  Id. at 1120 (citing Kimbro v. Pepsico, Inc., 215
17 F.3d 723, 726-27 (7th Cir. 2000)).  This Court agrees with the holdings in Wynn and Kimbro.
18 Although § 301 should be read broadly, it provides jurisdiction only for breach of contract
19 claims.  Absent a clear ruling from the Ninth Circuit holding otherwise, this Court will not
20 extend § 301 to allow federal common law tortious interference claims.

21                                      **III.  CONCLUSION**

22      For the foregoing reasons, defendants' motions to dismiss or, in the alternative, to stay
23 proceedings (Dkt. #s 20, 23, & 26) are GRANTED IN PART AND DENIED IN PART.
24 Defendants' motions to dismiss the § 301 claims premised on a breach of §§ 20.01 and 20.02 of
25 the CBA are DENIED.  Defendants' motions to dismiss the state law tortious interference with
26 contractual relations and conspiracy claims are GRANTED.  Defendants' motions to dismiss the

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY

1  tortious interference of contractual relations claims arising under federal common law are

2  GRANTED.  Finally, defendants' requests that this Court stay proceedings pending the

3  conclusion of NLRB proceedings are DENIED.

4

5       DATED this 11th day of July, 2005

6

7

8                                        Robert S. Lasnik
                                         United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER REGARDING MOTIONS
TO DISMISS OR TO STAY